EDWARD WARREN *vs.* WILLIAM T. MERRIFIELD.

By a written agreement between A. and B., A. promised to deliver to B. a specified quantity of timber on or before July 1st 1842, and a certain other quantity on or before September 1st 1842, at certain agreed prices ; and B. promised to give to A. a deed of certain land, estimated at a certain price per acre : B. also promised as follows : " To give A. a note for *all that is delivered on or before the 1st of July*, payable at bank in four months, and a note for half of balance, on the 1st day of October," &c. : By the agreement, as originally written, B. promised to give A. a note for " *one half of balance*, payable at bank in four months ;" but the words, " one half of balance," were erased, and the words, "all that is delivered on or before the 1st of July," were substituted by interlineation : A. delivered to B., on or before the 1st of July, all the timber which he had promised so to deliver, but the agreed price thereof was less than the agreed price of the land which B. had promised to convey to A.    *Held*, in an action brought by A. against B. for not giving a note for the timber so delivered, that, by the true construction of the agreement, B. was not bound to give such a note to A.

ASSUMPSIT on the agreement in the margin.*

The plaintiff, after setting forth the agreement, in his decla-

* " A memorandum of an agreement made on the 4th of May 1842, by and between Edward Warren, of the first part, and William T. Merrifield, of the

ration, alleged that he had done, conformably to said agree
ment, all that he had therein agreed to do, and had delivered
to the defendant a large quantity of timber, to wit, 50,000 feet,
board measure, on or before the 1st day of July 1842, which
timber was accepted by the defendant ; yet that the defendant
" did not nor would perform the said agreement, nor his said
promise and undertaking, but thereby deceived the said War-
ren in this ; that he did not nor would, on said 1st day of July,
at the said time when he was so requested, give said Warren
a note for all the said timber, to wit, said 50,000 feet, board
measure, at $3 per thousand, amounting to $150, which had

second part, witnesseth, that the said Warren, for the covenants and agree-
ments hereinafter mentioned, doth agree to deliver to the said Merrifield, at
the R. Road leading from mill to near said Warren's lot, at or below a large
pine tree near the upper curve in the R. Road, in a convenient place to load
into the cars, all his timber upon the lot joining M. Merriam's land, and Mer-
rifield & others, except the timber standing north of land cleared by said
Warren, of the descriptions given below." (Here the different kinds of timber
were particularly described.) " All kinds delivered as fast as may be wanted
after two weeks, except the timber for boards, plank or joist, which is to be
delivered *three thousand per week for two weeks, and after two weeks as fast as
may be wanted to saw by said Merrifield,* of the kind wanted by said Merri-
field, and all to be delivered on or before the 1st day of July next.

" And the said Merrifield on his part agrees to pay said Warren $3 per
1000 feet board measure, for all the square timber suitable for sawing into
boards, plank, joist or timber, and $1·50 per cord for all the other timber
above mentioned, in the following manner, viz. to give said Warren a deed
of all the land adjoining N. Merriam's pasture cut off by the new contemplated
road, if the said road shall be built ; if not, then all the land south of the water-
course near the R. Road, at $12 per acre, prepared to burn, or $10 per acre with
out preparing it for burning ; and if said new road cuts off all water from said
land, then said Merrifield is to deed to said Warren, where he may choose,
sufficient land, north of said line, for a watering place, and to give said War-
ren a note for *all that is delivered on or before the 1st of July next,* payable
at bank in four months, on the 1st of July next, and a note for the other half
of balance, on the 1st day of October next, payable in four months at bank, and
the said Merrifield agrees to have the timber all cut on or before the 15th day
of July next, and the lot all cleared on or before the 15th day of September next.

Edward Warren,<br/>William T. Merrifield. "

In the agreement, as originally written, instead of the first words in italic,
were the words " six thousand per week ; " and instead of the second words
in italic, were the words " one half of balance." These words were subse
quently erased, and the foregoing words in italic interlined, as substitutes.

then been delivered to him by said Warren, payable at bank in four months, but did then and there, although specially requested so to do, absolutely refuse to give said Warren said note for the amount of said timber, according to his said agreement, and had ever since neglected and refused."

At the trial in the court of common pleas, it was admitted by the plaintiff that he had not, before the commencement of this action, cut and delivered to the defendant timber enough to amount to the value of the land to be conveyed by the defendant. But the plaintiff contended that for all the timber cut and delivered before the 1st of July 1842, he was entitled to demand and receive a note from the defendant, as specified in the declaration. The judge ruled " that the plaintiff, under the fore going admission, was not entitled to claim or demand a note, as set forth in his declaration, according to the true construction and legal effect of said agreement." A verdict was therefore returned for the defendant, and exceptions were alleged by the plaintiff.

*Wood*, for the plaintiff.

*Washburn & Barton*, for the defendant.

SHAW, C. J. This is a special action of assumpsit, for breach of the defendant's promise, in not delivering to the plaintiff a promissory note for a quantity of timber delivered to the defendant on or before the 1st of July 1842, pursuant to contract. It appears by the exceptions, that on the 1st of July 1842, the quantity of timber delivered by the plaintiff, at the stipulated prices, did not equal the value of the land at the price agreed, and the question is, whether at that time there was any breach, on which this action will lie.

It is certainly difficult to put a sensible construction on this contract, and understand what the parties ultimately meant It was originally obscure, and is rendered still more so by interlined alterations, and there are some clauses which, in consequence of such alterations, are inconsistent, and cannot be reconciled with the rest of the instrument. In construing every instrument, we are to look at every part of it, to construe the language in the sense in which it appears that the parties understood it,

and to ascertain, if possible, their intention; and such intention, if it can be ascertained, must govern.

One good rule of construction, we think, is peculiarly applicable to a case like the present, where there have been considerable alterations, and where there are particular clauses not easily reconcilable with each other, and it is this; to read the whole instrument through, and, applying it to the subject matter, to ascertain the leading scope and purpose of the parties in making the contract; and when there is a difficulty in carrying out all the details, as contemplated by particular clauses, to construe all such particular clauses so as best to promote and accomplish the primary and leading purpose of the contract.

In looking into this contract, we think the leading and primary purpose of it was an exchange of a quantity of timber at fixed prices, for a tract of land at a fixed price, and the payment of the residue in cash notes on time. Originally, there was a stipulation in regard to the time of the delivery of the timber, (the 1st of July,) and the consequent acts of giving a deed of the land, and notes for the balance, were fixed accordingly; but this was subsequently altered by interlineations. It is obvious, however, that all the alterations were not made to correspond with such principal alteration; so that some of the clauses became irreconcilable. But we are of opinion, from the whole scope of the contract, that the primary purpose of giving the land for the timber, as far as it would go, was not changed by this alteration. Originally, the parties contemplated a delivery of the timber so fast, that by the 1st of July the quantity could be ascertained, and two notes for the balance be given. There the balance plainly meant the amount of cash which would be due for the timber, after applying the lands. But by the alteration, the time for completing the delivery was enlarged to the 1st of September. Then, instead of the provision for a note for half the balance, to be given on the 1st of July, as the amount might not be then ascertained so as to fix the balance, the stipulation was, that a note should be given for all delivered by the 1st of July. But the question arises, all what? The minds of the parties were upon the mode of pay-

ing the cash balance.   The stipulation for a conveyance of the land, to operate as payment *pro tanto,* still remained.   The provision still remains for a note for the other half of the balance, which would be absurd if the first note were not to be given as part of the balance.   The words, " other half," cannot be applied literally after the alteration ; because there remained no provision for the payment of one half ; but we think it must be understood to mean the " other part," or remainder *of the balance.*   This affords a clear implication, that the first note was for the cash balance.

On the whole, the court are of opinion that this stipulation, to give a note on the 1st of July for all then delivered, must be construed to be all the cash balance, after applying the land ; and that this construction will best carry into effect the intent of the parties, as expressed in this instrument.   Any other construction might strike out, or render nugatory, the important stipulation for a payment *pro tanto* for the timber by a conveyance of land, and would also render the stipulation for the payment of the " other half " of the balance absurd.   As the value of the timber, delivered on the 1st of July, did not equal the value of the land, there was no cash balance due, and the obligation to give a note was not broken.

*Exceptions overruled.*